**YANNI LAW, APC**
John C. Bohren (California State Bar No. 295292)
145 S Spring St; #850
Los Angeles, CA 90012
Telephone: (619) 433-2803
Fax: (800) 867-6779

**POULIN | WILLEY | ANASTOPOULO, LLC**
Andre Bèlanger (*Pro Hac Vice Forthcoming*)
Andre.Belanger@poulinwilley.com
cmad@poulinwilley.com
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LAURA MANNINO**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**MATTEL INC. and AMERICAN GIRL BRANDS, LLC,**<br><br>*Defendants*. | Civil Action No._____<br><br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Laura Mannino ("Plaintiff") brings this Class Action Complaint individually and on behalf of all others similarly situated, against Defendants Mattel Inc. ("Mattel") and American Girl Brands, LLC ("American Girl") (collectively known as "Defendants"). Plaintiff alleges the

1

following upon information and belief, based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

1. Plaintiff brings this class action complaint against Mattel Inc. and American Girl Brands, LLC, for their retention of a substantial windfall generated by unlawful tariffs imposed by the federal government under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq*.

2. Beginning in February 2025, the Trump administration imposed sweeping tariffs on imports from numerous countries under purported authority of the IEEPA. The tariffs dramatically increased the cost of imported consumer goods sold in the United States.

3. Major U.S. importers, including Defendants Mattel Inc. and American Girl Brands, LLC, responded by increasing prices on consumer goods to offset the cost of these tariffs. As a result, consumers in the U.S. paid higher retail prices for goods reflecting the economic burden of these tariffs.

4. Plaintiff is a consumer. On December 29, 2025, Plaintiff purchased a variety of dolls, clothing, accessories, and pet-related items. Additionally, the order also included complimentary Styled By You Experience accessories. After discounts, taxes, and applicable fees, the total amount of the purchase was $957.13. (*See* Exhibit A). Upon information and belief, multiple core doll SKUs moved from a $125 to a $135 price point in mid-2025 and held that increase through 2026 — a clean, SKU-level price increase aligned to the tariff window.

5. On February 20, 2026, the U.S. Supreme Court held that President Trump's IEEPA-based tariffs are unlawful. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026) (slip op. at 20), 146 S.Ct. 628 (2026).

6.      Resulting from that decision, importers who paid those IEEPA-based tariffs – including Mattel and American Girl – became entitled to refunds of the duties they previously paid to U.S. Customs and Border Protection ("CBP"). To facilitate the refunds to thousands of U.S. importers – including Mattel and American Girl – the CBP created a tariff refund website to manage IEEPA duty refunds following the Supreme Court's February 20, 2026, *Learning Resources, Inc.* decision.

7.      The economic reality of the tariff regime, however, is that importers like American Girl and Mattel did not ultimately bear all the costs of the tariffs. American Girl and Mattel, for instance, passed the elevated costs on to U.S. consumers in the form of higher retail prices on popular products, from mid- 2025 through 2026.

8.      Defendants therefore increased pricing to reflect tariff-related costs while also seeking refunds, reimbursements and relief from the federal government for Tariff payments. To the extent the Defendants were able to both recover tariff-related amounts from Consumers and obtain corresponding governmental relief, Plaintiff contends that Defendants retained a duplicative benefit.

9.      Unless restrained by this Court, Defendants stand to recover the same tariff payments twice – once from consumers through higher prices and again from the federal government through tariff refunds, including interest paid by the government on those refunds.

10.      This class action lawsuit seeks equitable relief to prevent Defendants from unjustly benefiting at the expense of Plaintiff and the Class.

11.      Unlike companies such as FedEx and UPS, which have explicitly stated they will pass tariff refunds back to their customers, American Girl and Mattel have made no such commitment.

12.    Plaintiff brings this class action on behalf of thousands, if not millions, of U.S. consumers who purchased American Girl's dolls during the tariff period and who paid inflated prices reflecting Defendants' pass-through of unlawful tariffs.

13.    Plaintiff seeks restitution of these tariff overcharges, together with appropriate declaratory, injunctive, and monetary relief.

## PARTIES, JURISDICTION & VENUE

14.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

15.    Plaintiff Laura Mannino is a resident citizen of Brooklyn, New York. Plaintiff purchased from American Girl a variety of dolls, clothing, accessories, and pet-related items imported from countries subject to tariffs imposed under the International Emergency Economic Powers Act ("IEEPA"). The purchase price for the goods that Plaintiff purchased from Defendants was increased to account for the tariffs imposed on those products. But for Defendant's pass-through of the IEEPA tariff costs to consumers, Plaintiff would not have incurred the increased purchase price.

16.    Defendant Mattel Inc. is a Delaware corporation with its principal place of business located in 333 Continental Boulevard, El Segundo, California 90245. This location serves as the principal place of business and primary executive office for both Mattel Inc. and American Girl Brands, LLC. [1]

---

[1] https://mattelsupport.com/mattel-group-of-companies/

4

17.     Defendant American Girl Brands, LLC is an operational subsidiary of Defendant Mattel Inc. with its primary operational address located in 8400 Fairway Place, Middleton, Wisconsin 53562.

18.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one class member and Defendants are citizens of different states. And there are over 100 putative Class Members.

19.     This Court has personal jurisdiction over Defendant because its headquarters are located within this District, Defendants regularly conduct business in this District, and the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

20.     Venue is proper in this Court because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District and because Defendant's principal place of business is located within this District.

## **FACTUAL ALLEGATIONS**

21.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

22.     Defendant Mattel is a leading global play and family entertainment company and owner of one of the most iconic brand portfolios in the world.[2] Mattel engages consumers and fans through franchise brands like Barbie, Hot Wheels, Fisher-Price, American Girl, Thomas & Friends, UNO, Masters of the Universe, Matchbox, Monster High, Polly Pocket, as well as other popular properties that they own or license in partnership with global entertainment companies.[3]

---

[2] https://corporate.mattel.com/about-us?_gl=1*k2cm11*_up*MQ..*_ga*NzkzOTc2OTY1LjE3ODA2NzA5MjQ.*_ga_6TREHF7P2E*czE3ODA2NzA5MjMkbzEkZzAkdDE3ODA2NzA5MjMkajYwJGwwJGgyMDI2OTc0OTc1
[3] Id.

5

23.     Mattel's offerings include toys, content, consumer products, digital and live experiences.

24.     American Girl is an American line company owned by Mattel that it is well known for selling 18-inch dolls. The company offers dolls, clothes, books, magazines, game toys, and stationaries to customers in the United Sates.

25.     After Mattel bought American Girl, production of dolls moved to China.

26.     Many factories have manufactured American Girl dolls in China, but the majority of them are in Shenzhen, and then imported into the United States[4].

27.     Because American Girl imported the dolls sold in the U.S. during the Class period, the IEEPA tariffs directly increased American Girls' cost of these dolls sold to U.S. consumers.

28.     Beginning in February 2025, President Trump issued a series of executive orders to impose tariffs on goods imported from most foreign countries, including Canada, Mexico, China, and other U.S. trading partners. Each executive order was premised on IEEPA authorization of the tariffs. President Trump claimed that these tariffs were justified under IEEPA because of a purported national emergency.

29.     Under the authority of IEEPA, President Trump imposed tariffs of 25% on most imports from Canada and Mexico, tariffs as high as 145% from China, and a baseline 10% tariff on nearly all imports to the United States.

30.     Throughout the relevant period, Defendants Mattel Inc. and American Girl Brands, LLC paid IEEPA tariffs to the CBP. The IEEPA tariffs had a substantial impact on the cost of American Girl Products, which are imported from tariffed countries, including a majority from China.

---

[4] https://www.americangirldollnews.com/post/where-are-american-girl-dolls-manufactured

31.     Economists and government agencies widely recognize that tariffs are largely borne by domestic consumers rather than foreign exporters or the importing firms that formally remit the duties. Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods.[5]

32.     When tariffs increase the cost of imported goods, retailers and other downstream sellers typically raise prices to offset those additional costs. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of firms facing tariff-related cost increases passed at least some portion of those costs through to their customers in the form of higher prices.[6] Companies consider tariffs to be costs that are to be incorporated into the pricing structure.

33.     Defendants were no exception. Like other companies that faced the massive IEEPA tariffs, Defendants raised its dolls prices from mid 2025 through 2026.

34.     Citing inflation and global economic pressures, Defendants had passed the elevated tariff costs on to U.S. consumers in the form of higher retail prices. The company expressed back in 2025 that they were "taking pricing action" in their US business "where necessary" in response to the tariffs.[7]

35.     Consumers of American Girl's products started reporting on July 1, 2025, an increase in prices due to the tariffs[8].

---

[5] *See* Julian Hinz et al., *America's Own Goal: Who Pays the Tariffs?*, Kiel Inst. for the World Econ. Policy Brief (Jan. 19, 2026); see also Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020).

[6] *See* Jaison R. Abel, Richard Deitz & Jason Bram, *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?*, Fed. Rsrv. Bank of N.Y., Liberty Street Econ. (June 4, 2025), available at https://libertystreeteconomics.newyorkfed.org.

[7] https://www.theguardian.com/us-news/2025/may/06/barbie-maker-mattel-us-prices-trump-tariffs-ford-china
[8] https://www.americangirldollnews.com/post/price-increases-for-almost-everything-on-american-girl-s-site

36. The Plaintiff purchased a Truly Me™ 18-inch Doll #107 with straight brown hair on December 29, 2025. The Product was priced at $135.00 as shown below. However, months before, on June 11, 2025, the doll's price was $125.00[9]. This was a $10.00 difference right after the announcement of the Tariffs.



Truly Me™ 18-inch Doll #107 with straight brown hair current price in June of 2026[10]



[9] https://web.archive.org/web/20250611162005/https://www.americangirl.com/products/truly-me-18-inch-doll-107-with-straight-brown-hair-jfh02

[10] https://www.americangirl.com/products/truly-me-18-inch-doll-107-with-straight-brown-hair-jfh02

Truly Me™ 18-inch Doll #107 with straight brown hair's price on June 11, 2025[11]

37.    The Plaintiff also purchased some outfits and accessories for the dolls that showed an increase of price due to the implementation of Tariffs.



Happy Birthday to You Outfit for 18-inch Dolls' price in December 2025[12]



[11] https://web.archive.org/web/20250611162005/https://www.americangirl.com/products/truly-me-18-inch-doll-107-with-straight-brown-hair-jfh02

[12]  https://web.archive.org/web/20251218044741/https://www.americangirl.com/products/happy-birthday-to-you-outfit-for-18-inch-dolls-hww66

9

Happy Birthday to You Outfit for 18-inch Dolls' price in February 2025[13]



American Girl® Doll Carrier for 18-inch Dolls current price in June 2026[14]



---

[13] https://web.archive.org/web/20250214171324/https://www.americangirl.com/products/happy-birthday-to-you-outfit-for-18-inch-dolls-hww66
[14] https://www.americangirl.com/products/american-girl-doll-carrier-for-girls-hrn83

American Girl® Doll Carrier for 18-inch Dolls' price on February 14, 2025[15]

38.    On February 20, 2026, the U.S. Supreme Court held that the IEEPA tariff regime was unlawful because the IEEPA does not authorize the President to impose such tariffs; the Court thus invalidated all IEEPA-based tariffs. *Learning Resources, Inc. v. Trump*, 607 U.S. __ (2026) (slip op. at 20), 146 S.Ct. 628 (2026).

39.    President Trump subsequently issued an Executive Order terminating the IEEPA Tariffs, and on February 22, 2026, the CBP issued CSMS #67834313, announcing that it would halt the collection of all tariffs imposed pursuant to IEEPA. The termination of IEEPA tariffs took effect at 12:00 a.m. EST on February 24, 2026.

40.    Consequently, importers who had paid these IEEPA-based tariffs – including Mattel and American Girl – became entitled to refunds of the duties they had previously paid to the CBP. According to Mr. Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA was approximately $166 billion. *Atmus Filtration, Inc. v. United States*, No. 26-01259, Order at 1 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 31 at 6.

41.    To facilitate refunds of the $166 billion in collected tariffs, the CBP created a tariff refund website – the "Consolidated Administration and Processing of Entries (CAPE) portal", which went live on Monday, April 20, 2026, at 8 a.m. EST. The CBP expects refunds to be issued within 60 to 90 days after it accepts a refund application.

---

[15] https://web.archive.org/web/20250214105444/https://www.americangirl.com/products/american-girl-doll-carrier-for-girls-hrn83

11

42. Given the substantial amount of IEEPA tariffs Defendants paid to the CBP because of importing the dolls and accessories, it is now, understandably, in the process of seeking this vast sum of money from the CBP.

43. This presents an obvious problem. Although Defendants will recover tariff refunds on the tariffed products it sold in the U.S. during the Class period, Defendants' U.S.-based customers bore the economic brunt of these tariffs by paying higher prices set by Defendants from mid 2025 through 2026. Defendants obtaining a double recovery windfall is therefore imminent. Defendants are poised to be paid twice for the same unlawful tariff burden: once by their customers (through elevated prices) and once by the U.S. government (through tariff refunds).

44. Defendants have an affirmative obligation and duty not only to actively seek from the U.S. the tariff refund money belonging to its customers who purchased products from American Girl during the Class period, but also an affirmative obligation and duty to proactively return this money to the parties that ultimately paid them – Defendants' customers.

45. Unlike the other companies, including FedEx and UPS, who have explicitly stated that they will pass tariff refunds back to their customers, Defendants Mattel Inc. and American Girl Brands, LLC have made no such commitment.

46. Because Defendants have made no legally binding commitment, on their own, to return tariff-related overcharges to consumers who actually paid them, the Plaintiff and members of the Class are given no choice but to seek return of their money by means of this class litigation. The Plaintiff believes this to be the most reliable, efficient, and economical vehicle to serve this purpose.

## CLASS ALLEGATIONS

47.　　Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

48.　　Plaintiff brings this class action on behalf of herself and on behalf of all others similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3). The class Plaintiff seeks to represent can be defined as:

> **Nationwide Class**: **All individuals in the United States who purchased Mattel Inc.'s subsidiary American Girl Brands, LLC's products that had a price increase during the class period of February 1, 2025, to the present.**

> **New York Subclass**: **All individuals in New York who purchased Mattel Inc.'s subsidiary American Girl Brands, LLC's products that had a price increase during the class period of February 1, 2025, to the present.**

49.　　Specifically excluded from the Class are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

50.　　Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

51.　　This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

52.　　Numerosity: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are

presently within the sole knowledge of Defendants, upon information and belief, Plaintiff estimates that the Class is comprised of thousands of Class Members, if not more. The Class is sufficiently numerous to warrant certification.

53.    <u>Typicality of Claims</u>: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, purchased goods from Defendants that were subject to IEEPA tariff related price increases. The harm suffered by Plaintiff is similar to that suffered by all other Class Members which was caused by the same misconduct by Defendant.

54.    <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interest antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

55.    <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendants will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

56.    <u>Predominant Common Questions</u>: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including, but not limited to:

    a.    Whether Defendants engaged in the uniform conduct, practices, representations, omissions, or policies alleged herein;

14

b.  Whether Defendants' conduct was unlawful, or otherwise actionable under applicable federal and state law;

c.  Whether Defendants breached duties owed to Plaintiff and Class Members;

d.  Whether Defendants passed tariff costs onto its customers by paying duties at customs and then increasing the retail prices on goods sold;

e.  Whether Defendants included additional processing or brokerage fees above and beyond the amount of the tariff costs;

f.  Whether Defendants failed to refund consumers any price increase associated with the payment of tariffs and associated processing fees.

g.  Whether Defendants' conduct caused injury to Plaintiff and Class Members;

h.  Whether Defendants were unjustly enriched; and

i.  The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

57.  These common questions are capable of class wide resolution because they arise from Defendants' uniform conduct and do not depend on individualized proof. The determination of these issues will resolve central aspects of Defendants' liability in a single adjudication and will materially advance the resolution of this litigation.

58.  Plaintiff knows of no obstacle to the efficient management of this case that would preclude its maintenance as a class action.

59.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying rulings and impose incompatible standards of conduct on Defendants. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

**CAUSES OF ACTION**

**COUNT I: UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**

60. Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

61. Plaintiff and Class members conferred a direct financial benefit upon Defendants by paying tariff-related charges in the form of increased prices on goods.

62. Defendants knowingly received and accepted these benefits.

63. The tariff-related price increases that Defendants imposed and collected were unlawful and unauthorized.

64. Defendants collected and retained funds to which they were not legally entitled.

65. Defendants retained these funds despite knowing, or having reason to know, that such charges were unlawful, invalid, or subject to refund.

66. It would be inequitable and unjust for Defendants to retain these funds.

67. Plaintiff and Class members suffered economic injury as a result of Defendants' unjust retention of these funds.

68. Defendants were unjustly enriched at the expense of Plaintiff and Class members.

69. Equity and good conscience require that Defendants disgorge all unlawfully obtained funds and make restitution to Plaintiff and Class members.

**COUNT II: MONEY HAD AND RECEIVED**
**(On behalf of Plaintiff and the Class)**

70. Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

71. Defendants received money from Plaintiff and from each member of the Class in the form of higher prices caused by the pass-through of IEEPA tariff costs.

72. Defendants received this money for the purpose of repaying itself the IEEPA tariffs it had advanced, as the importer of record, to CBP as duties on the imported products.

16

73. The Supreme Court has since determined that these tariffs are unlawful because they lacked the requisite statutory authorization.

74. The money belonged to Plaintiff and to each member of the Class. Specifically, the money that consumers paid above and beyond what they would have paid absent the IEEPA tariffs belonged to Plaintiff and to each member of the Class.

75. Defendants have not returned the money to the Plaintiff or to members of the Class.

76. Permitting Defendants to retain the tariff surcharge would be inequitable and contrary to principles pf good conscience. Defendants unjustly received and retained funds that consumers paid as a result of the IEEPA tariffs, amounts that would not have been charged absent the tariffs. The money rightfully belongs to the Plaintiff and to members the Class, and Defendants are obligated to return it in an amount to be proven at trial.

77. Plaintiff pleads this Count in the alternative to Count 1. While Count 1 (Unjust Enrichment) addresses the inequity of Defendants' retention of overcharges already collected, this Count more particularly addresses Defendants' receipt and retention of government refund proceeds that, in equity, represent a return of money that was economically borne by Plaintiff and members of the Class, and not by Defendants.

78. Plaintiff and members of the Class seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to them.

**COUNT III: DECLARATORY JUDGMENT**
**(On behalf of Plaintiffs and the Class)**

79. Plaintiff incorporates by reference and re-alleges each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

80. In or around April 2025, U.S. Customs and Border Protection debuted a tariff refund claims portal where Importers of Record can submit a declaration for the tariffs they paid under the IEEPA and receive a consolidated refund amount.

81. Defendants have filed, or will file, a claim alleging it has suffered injury from having to pay IEEPA duties to the United States and requesting a full refund of what it paid for IEEPA tariffs. However, Defendants passed the cost of the IEEPA tariffs onto consumers like Plaintiff and Class Members.

82. Despite the IEEPA tariffs being declared illegal, Defendants have not established a refund process for Plaintiff and Class Members.

83. As a direct and proximate result of the Defendants' conduct, Plaintiff and Class Members suffered damages.

84. In light of the foregoing, a substantial controversy exists between the parties, having adverse legal interests, of sufficient immediacy and reality to warrant a declaratory judgment.

85. Under the Declaratory Judgment Act, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further relief as necessary.

86. Accordingly, Plaintiff and Class Members are entitled to a declaration that any contract, agreement, or other arrangement that permitted Defendant to collect funds from Plaintiff and Class Members for IEEPA tariff related charges is rescinded and void *ab initio*.

87. Plaintiff and Class Members are also entitled to a declaration that any refund Defendants obtain from the U.S. government for IEEPA tariffs must be returned to Plaintiff and Class Members.

## PRAYER FOR RELIEF

18

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

(a)     For an order determining that this action is properly brought as a class action and certifying Plaintiff as representative of the Class and their counsel as Class Counsel;

(b)     For an order declaring that Defendants' conduct violates the causes of action referenced herein;

(c)     For an order declaring that Defendants are obligated to reimburse Plaintiff and Class Members for any and all sums paid in connection with unlawful tariffs;

(d)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(e)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(f)     For pre-judgment interest on all amounts awarded;

(g)     For an order of restitution and all other forms of equitable monetary relief;

(h)     For injunctive relief as pleaded or as the Court may deem proper;

(i)     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(j)     Such other and further relief as the Court deems necessary and appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: August 6, 2026

By: */s/ John C. Bohren*
**YANNI LAW APC**
John C. Bohren (California State Bar No. 298476)
145 S Spring St; #850 Los Angeles, CA 90012
Telephone: (619) 433-2803
Fax: (800) 867-6779
Email:Yanni@bohrenlaw.com

AND

**POULIN | WILLEY | ANASTOPOULO, LLC**
Andre Bèlanger (*Pro Hac Vice Forthcoming*)
Andre.Belanger@poulinwilley.com
cmad@poulinwilley.com

32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536

*Attorneys for Plaintiff and the Class*

20